**MILES LABORATORIES, Inc., v. SIMON et al.**

No. 1245.

District Court, E. D. Michigan, S. D.

June 24, 1940.

Miller, Canfield, Paddock & Stone, of Detroit, Mich., and Verne G. Cawley, of Elkhart, Ind., for plaintiff.

Charles Rubiner, of Detroit, Mich., for defendants.

O'BRIEN, District Judge.

Plaintiff seeks an injunction against defendants to restrain violations of the so-called Michigan Fair Trade Act (Act No. 50 of the Public Acts for the year 1937) allegedly threatened by the defendants.

The relevant facts are embodied in an agreed statement of facts stipulated in writing by the parties through their counsel and filed with the court. This stipulation may be summarized as follows:

Plaintiff, an Indiana corporation, is engaged in the manufacture of two proprietary remedies known as and sold under the trade-names of "Alka-Seltzer" and "Dr. Miles Nervine", respectively. Alka-Seltzer is an effervescent analgesic alkalizer sold in tablet-form and packed in cartons. Dr. Miles Nervine is a sedative in liquid form and is sold in glass bottles which are in turn enclosed in paper cartons. The trade-marks "Alka-Seltzer" and "Dr. Miles Nervine" belong to plaintiff and all of the cartons and bottles as sold bear the appropriate trade-marks on them. Both articles are sold in free and open competition with proprietary remedies of the same class produced and sold by other manufacturers, and plaintiff has expended large sums of money in promoting sales and in developing good-will for its products.

Defendants own and operate a retail store at the City of Pontiac where merchandise manufactured by plaintiff, and other articles, are offered for sale.

The amount in controversy is acknowledged to be in excess of $3,000.

Pursuant to the privilege afforded it by the Michigan Fair Trade Act, plaintiff established and promulgated certain minimum prices for Alka-Seltzer and Dr. Miles Nervine, the prices varying with the number of tablets of Alka-Seltzer sold and with the size of the bottles of Dr. Miles Nervine. These minimum prices were made known to the retailers by so-called Fair Trade Agreements, entered into between plaintiff and such retailers who chose to sign them, which agreements required the retailers to sell plaintiff's products for not less than the minimum prices established by it. Defendants refused to sign such an agreement but knew that plaintiff was selling its products at retail in the State of Michigan in accordance with the provisions of the Fair Trade Act, and that it had established minimum prices therefor. Defendants do not sell below these minimum prices, but add nothing to them for Michigan sales tax. Defendants deny that by so doing they violate the Fair Trade Act. This attitude has prompted plaintiff to refuse to sell its products to defendants. It has likewise instructed its factors not to accept orders therefor from the defendants. It is acknowledged, however, that defendants can and do purchase plaintiff's products through other sources.

The single issue of law which is thus presented to the court grows out of the contention of the defendants that they may, without violating the Fair Trade Act, sell plaintiff's products at the retail prices established therefor, without collecting from the purchasers the general sales tax imposed upon retail sales by Act 167 of the Public Acts of the State of Michigan for the year 1933. (Stat.Ann. Sec. 7.521 et seq.) Defendants urge that the sales tax is no part of the price and that there is accordingly no violation of the Fair Trade Act as long as the prices charged for the merchandise do not fall below the minimum prices as established by plaintiff.

Determination of this issue must turn, therefore, upon the construction to be placed upon the Michigan Sales Tax Act. Its title declares that its purpose is, inter alia, " * * * to provide for the raising of additional public revenue by prescribing certain specific taxes, fees, and charges to be paid to the state for the privilege of engaging in certain business activities; to provide, incident to the enforcement thereof, for the issuance of licenses to engage in such occupations."

Section 2, which specifically imposes the tax, reads as follows: "There is hereby levied upon and there shall be collected from all persons engaged in the business of making sales at retail, as hereinbefore defined, an annual tax for the privilege of engaging in such business equal to three per cent of the gross proceeds thereof, less deductions allowed in section four."

The tax has been held to be a privilege fee imposed upon persons doing business at retail. C. F. Smith Co. v. Fitzgerald, 270 Mich. 659, 259 N.W. 352; Montgomery & Ward Co. v. Fry, 277 Mich. 260, 269 N.W. 166.

In Wyandotte City v. Board, 278 Mich. 47, 270 N.W. 211, 212, the Supreme Court of Michigan said: "The tax is not imposed upon the consumer, but upon those 'engaged in the business of making sales at retail, as hereinbefore defined.'"

It is acknowledged by counsel, in their respective briefs, that under the law it is left optional with the retailer whether he will absorb the tax himself or collect it from his customers. Plaintiff admits, moreover, that "if the question of unfair competition were not herein involved, plaintiff would not insist that defendants must collect the tax from their customers."

Does the Fair Trade Act alter the situation so as to restrict defendants' admitted option? I think not. Plaintiff directs us to no language in the act to this effect. The court is unable to subscribe to plaintiff's theory that addition of the tax to the retail price may be compelled, in the absence of any such express requirement in the Fair Trade law. On the contrary, it would seem to the court to be more logical to hold that, since the practice of adding the tax, widespread as it may be, is nevertheless purely optional, there is no right in the court to compel exercise of the option. A privilege loses its character when it is declared mandatory. Any other conclusion would necessitate reading into the act a provision which the legislature itself chose not to include. Such a holding would be legislative in character and outside the sphere of judicial authority.

Counsel agree that the precise question is without precedent in any jurisdiction, although it seems that one or two of the state fair trade acts in express terms require addition of the sales tax to established minimum retail prices. The Michi-

gan act, as already pointed out, is silent in this respect.

The sales tax being, therefore, merely a privilege fee exacted from the retailer by the State for the right of doing business and there appearing to be no obligation on the part of the retailer to pass the amount of the tax on to the consumer, it should be held that the minimum prices established by plaintiff are met when they are exacted without addition of the tax. No violation of the Michigan Fair Trade Act ensues thereby.

A decree may be entered denying the injunction prayed for and dismissing the complaint, with costs to the defendant.